UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STEPHEN NEDERHOED and
PAULA NEDERHOED,

        Plaintiffs,

v.                                                                                    Case No.  1:12-CV-704

JP MORGAN CHASE BANK, a Federal                    HON. GORDON J. QUIST
Association, and FEDERAL NATIONAL
MORTGAGE ASSOCIATION, a Federal
Association, jointly and severally,


        Defendants.
_____/


## OPINION

Plaintiffs, Stephen and Paula Nederhoed, have sued Defendants, JP Morgan Chase Bank

(Chase) and Federal National Mortgage Association (Fannie Mae), alleging various claims arising

out of a foreclosure of the mortgage on the Nederhoeds' residence.[1]  Those claims include rescission

(Count I); Defendants' waiver of right, privilege, advantage or benefit (Count II); estoppel (Count

III); unclean hands, civil fraud (Count IV); and breach of contract (Count V).  For relief on Counts

I through IV, the Nederhoeds request that the Court rescind or set aside the foreclosure sale and

restore the Nederhoeds' ownership of the property.  In Count V, the Nederhoeds seek damages in

excess of $25,000 for Defendants' alleged breach of a forbearance agreement and two adjustment

agreements.

---

[1] The Nederhoeds initially filed suit in the Kalamazoo County Circuit Court on or about June 11, 2012.
Defendants removed the case to this Court on July 5, 2012, alleging diversity jurisdiction under 28 U.S.C. § 1332(a) as
the basis for removal jurisdiction.  (Notice of Removal, dkt. # 1.)  Following the removal, the parties filed a series of
stipulations and orders, which the Court entered, extending the time for Defendants to respond to the complaint while
the parties engaged in settlement discussions.  (Dkt. ## 5–16.)  Defendants filed the instant motion after the parties
reached an impasse.

Defendants now move for dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, the Court will grant Defendants' motion and dismiss the complaint with prejudice.

## I. BACKGROUND

The following facts are based on the allegations in the Nederhoeds' complaint, the documents attached to the complaint, matters of public record, and exhibits attached to Defendants' motion that are referred to in the complaint.[2]

On July 9, 1999, the Nederhoeds obtained a mortgage loan from First Chicago NBD Mortgage Company (First Chicago) in the principal amount of $217,600. To secure the loan, the Nederhoeds granted First Chicago a mortgage on real property (Property) commonly known as 8820 W. ML Ave., Kalamazoo, Michigan 49009. (Compl. ¶¶ 4, 5; Defs.' Br. Supp. Mot. Ex. 1.) On January 25, 2001, First Chicago assigned the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS). (Defs.' Br. Supp. Mot. Ex. 2.) On April 25, 2008, MERS assigned the mortgage to Chase. (*Id.* Ex. 3.) Both assignments were properly recorded in the Kalamazoo County Register of Deeds.

During 2009, the Nederhoeds fell behind in their mortgage payments due to unemployment and economic uncertainties. (Compl. ¶ 6.) Unable to make their mortgage payments, the Nederhoeds sought assistance from Chase, which offered the Nederhoeds a Forbearance Plan Agreement (FPA), which the Nederhoeds accepted and signed. (*Id.* ¶¶ 6, 8; Compl. Ex. D.) The

---

[2] Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Rule 12(b)(6), courts may consider various documents without converting the motion to a motion for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

FPA required the Nederhoeds to make monthly payments in the amount of $448.88 from July 2009 through December 2009. The FPA also provided:

> Payments are subject to change due to escrow analysis and or interest rate changes, if applicable. If you are notified of a payment adjustment, please contact our office immediately so we can adjust the terms of your Agreement accordingly. If all payments are made as scheduled, we will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current.
>
> All of the original terms of your loan remain in full force and effect, unless specifically mentioned within this Agreement. . . .

(Compl. Ex. D.)

The Nederhoeds made their first payment under the FPA but received a letter from Chase shortly thereafter, stating that Chase would not accept the payment because "'[f]unds insufficient to cure default.'" (Compl. ¶ 6.) Chase sent the Nederhoeds mortgage rate change notices on September 1, 2010, and again on September 1, 2011, each time notifying the Nederhoeds of a new interest rate and a new monthly payment amount. The Nederhoeds timely made all of the adjusted payments. (*Id.* ¶¶ 7, 8.) However, Chase continued to send the Nederhoeds delinquency notices. Chase also responded to the Nederhoeds' written inquiries by informing them that their "'inquiry [wa]s under'" review. (*Id.* ¶ 9.) The Nederhoeds made numerous attempts to contact Chase by telephone to discuss the status of their loan, but were able to speak with a live person on only one occasion, when they learned that Chase had assigned their mortgage to Fannie Mae. (*Id.* ¶ 12.) The Nederhoeds had no further contact with any person or entity concerning their mortgage until May 24, 2012, when a realtor arrived at their front door to post a notice stating that Chase, on behalf of Fannie Mae, had completed a foreclosure on the Property. The realtor advised the Nederhoeds that they could rent the Property. (*Id.* ¶ 13.)

The Nederhoeds claim that Chase never provided them with notice of the foreclosure or the foreclosure sale and never posted a notice of foreclosure in a conspicuous place on the Property. (Compl. ¶¶ 15, 17, 18.)  The foreclosure sale was held on September 9, 2010, at which Chase purchased the Property for $219,333.53 and received a Sheriff's Deed. (Defs.' Br. Supp. Ex. 4, Page ID 119.)  Following the foreclosure sale, Chase transferred the Property to Fannie Mae. (Defs.' Br. Supp. Ex. 5.)  The redemption period expired on March 9, 2011, but the Nederhoeds did not redeem the Property.

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).  The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).  "[W]here the well-pleaded facts do not permit the court to infer

4

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

**A.    The Nederhoeds' Foreclosure-Related Claims (Counts I–IV) Provide No Basis to Invalidate the Foreclosure**

In Michigan, the rights of a mortgagor and mortgagee after foreclosure are controlled by statute. *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 52, 503 N.W.2d 639, 642 (1993). The foreclosure statute provides that once the redemption period has expired, all of the mortgagor's rights in the property are extinguished by operation of law. M.C.L. § 600.3236; *see Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187–88, 4 N.W.2d 514, 517 (1942). The six-month statutory redemption period under M.C.L. § 600.3240 may not be extended absent a clear showing of fraud or irregularity. *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) (per curiam) (citing *Schulthies v. Barron*, 16 Mich. App. 246, 247–48, 167 N.W.2d 784, 785 (1969) (per curiam)). The fraud or irregularity must be present in the foreclosure process itself. *Williams v. Pledged Prop. II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012). Thus, to upset the foreclosure once the redemption period has expired "would require a strong case of fraud or irregularity, or some peculiar exigency." *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997) (citing *Detroit Trust Co. v. Aqozzino*, 280 Mich. 402, 405–06, 273 N.W. 747, 748 (1937) and *Calaveras Timber Co. v. Mich. Trust Co.*, 278 Mich. 445, 450, 270 N.W. 743, 745 (1936)); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) (observing that "in the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict . . . requirements" of the foreclosure statute).

Because the Nederhoeds did not contest the foreclosure prior to the expiration of the

redemption period, they may obtain relief only if they can establish a strong case of fraud or

irregularity in connection with the foreclosure sale. *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App.

492, 497, 739 N.W.2d 656, 659 (2007). Defendants contend that the foreclosure sale complied with

all of the statutory requirements[3] and the Nederhoeds have not sufficiently alleged fraud or

irregularity in connection with the foreclosure sale. Defendants contend that the Nederhoeds'

assertions that they never received notice of the foreclosure and that Chase never posted a

foreclosure notice on the Property as required by M.C.L.A. § 600.3208 do not save their claims from

dismissal. Defendants argue that the Evidence of Sale and Affidavit of Publication, attached to

Defendants' opening brief, shows that notice was in fact posted on the Property on February 12,

2009. (Defs.' Br. Supp. Ex. 4 at Page ID 122.) Defendants further note that because the affidavit

was recorded, it is presumptive evidence of the facts stated therein. *See* M.C.L. A. § 600.3264

(affidavits recorded by the register of deeds "shall be presumptive evidence of the facts therein

contained"). The Nederhoeds respond that the allegations in their verified complaint that they never

---

[3]Under Michigan law,

a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

 (a) A default in a condition of the mortgage has occurred, by which the power to sell became
operative.

 (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the
mortgage or any part fo the mortgage; or, if an action or proceeding has been instituted, the action or
proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding
has been returned unsatisfied, in whole or in part.

 (c) The mortgage containing the power of sale has been properly recorded.

 (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the
indebtedness secured by the mortgage or the servicing agent of the mortgage.

M.C.L.A. § 600.3204(1).

received notice of the foreclosure and that a foreclosure notice was never posted on the Property

suffice to create a disputed issue of fact and defeat Defendants' motion to dismiss.[4]

The Court rejects the Nederhoeds' argument because the allegations in their verified

complaint do not contradict Defendants' affidavit of posting. "A failure to observe the posting does

not, by itself, contradict evidence that the notice was properly posted." *Galati v. Wells Fargo Bank*,

No. 11-11487, 2011 WL 5178276, at *6 (E.D. Mich. Nov. 1, 2011) (citing *Grech v. Am. Home Mort.*

*Servicing*, No. 292121, 2010 WL 376609, at *1 (Mich. Ct. App. Sept. 28, 2010) (per curiam)). In

*Grech*, the defendant presented an affidavit stating that a notice of the foreclosure sale had been

posted in a secure manner on the front door of the plaintiffs' property. The plaintiffs responded with

an affidavit averring that they never observed a notice of foreclosure posted on the front door or at

any other conspicuous location at the property. The court held that the plaintiffs' assertions were

insufficient to defeat the defendant's evidence of posting, observing:

> Although plaintiffs' affidavit stated that they "resided" at the property and never
> observed a notice of foreclosure posted on the front door or any other conspicuous
> place, the affidavit does not state that they had occasion to observe the front door on
> or around the date of the purported posting and that the notice was not present. Their
> failure to observe the posting does not by itself contradict defendant's evidence that
> the notice was properly posted on the front door.

*Grech*, 2010 WL 376609, at *1.

As in *Grech*, the Nederhoeds broadly assert that a notice of foreclosure was never posted on

the Property in a conspicuous place, but they fail to allege that they observed the Property on or

around February 12, 2009—the date the affidavit of posting states that a notice of foreclosure was

---

[4] Although not explicitly alleged in their complaint, the Nederhoeds also argue that the foreclosure was invalid because the FPA adjusted their mortgage, such that there was no default under the mortgage. (Pls.' Resp. at 11.) This argument is contradicted by the Nederhoeds' own admission in their complaint that they defaulted based on nonpayment. (Compl. ¶ 6.) Moreover, as explained below, Michigan's statute of frauds bars the Nederhoeds from asserting that the FPA altered the terms of the mortgage.

posted on the Property. Thus, following *Grech*, the Court concludes that the Nederhoeds' verified —but very general—allegation that a foreclosure notice was never posted on the Property is insufficient to contradict the factual assertion in the affidavit of posting that notice was posted on the Property on February 12, 2009.

Moreover, the Nederhoeds' notice argument fails even if their verified allegations could establish a lack of notice. A defect in the foreclosure process under Michigan law does not void the foreclosure, but instead renders it merely voidable. *Kim v. JPMorgan Chase Bank, N.A.*, 439 Mich. 98, 115, 825 N.W.2d 329, 337 (2012). Under this standard, a plaintiff seeking to set aside a foreclosure sale must show prejudice resulting from noncompliance with the foreclosure requirements. *Id.* Specifically, a plaintiff "must show that [he] would have been in a better position to preserve [his] interest in the property absent defendant's noncompliance with the statute." *Id.* at 115–16, 825 N.W.2d at 337; *see also Jackson Inv. Corp. v. Pittsfield Prods., Inc.*, 162 Mich. App. 750, 755, 413 N.W.2d 99, 101 (1987) (holding that "a defect in notice renders a foreclosure sale voidable"). Although the Nederhoeds make vague references to prejudice in their complaint, they fail to allege how notice of the foreclosure would have put them in a better position to preserve their interest in the Property. The Nederhoeds do not allege that they would have redeemed the Property, or even that they had the means to do so. Accordingly, the Nederhoeds fail to establish that the foreclosure should be set aside because of a defect in the foreclosure process.[5]

In Count IV, the Nederhoeds allege that Defendants engaged in civil fraud. Their scant and conclusory allegations, however, provide no basis to set aside the foreclosure sale. That is, the Nederhoeds allege that Defendants committed "civil fraud," but they fail to allege the nature of the

---

[5] In light of this conclusion, the Court need not address Defendants' laches argument. Similarly, the Court need not address Defendants' argument regarding the viability of the Nederhoeds' unclean hands claim in Count IV.

fraud or, more importantly, that such fraud was committed as part of the foreclosure process. *See Williams*, 508 F. App'x at 468. Thus, the Nederhoeds have failed to sufficiently allege fraud as a basis to set aside the foreclosure.[6]

**B.      The Breach of Contract Claim is Barred by the Statute of Frauds**

In Count V, the Nederhoeds allege that Defendants breached the FPA and the mortgage adjustment notices by foreclosing on the Property. This claim is barred by Michigan's statute of frauds, which states in relevant part:

> With regard to claims against financial institutions, Michigan's statute of frauds provides:
>
> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

M.C.L.A. § 566.132(2). This provision applies to actions against financial institutions based upon a promise to modify a loan and is "'unambiguous.'" *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *3 (W.D. Mich. Mar. 25, 2011) (quoting *Crown Tech. Park v. D & N*

---

[6] Although the Nederhoeds have had ample time to do so, they have neither requested leave to amend nor submitted a proposed amended complaint to address any pleading deficiencies. Accordingly, the Court need not consider whether the Nederhoeds should be allowed to amend. *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013) (declining to consider whether the district court erred in dismissing the plaintiff's complaint without allowing her leave to amend because the plaintiff "did not move for leave to amend her complaint in the district court or file a proposed amended complaint"); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008) ("Importantly, Plaintiffs never requested leave for additional amendments, and it is not the district court's role to initiate amendments.").

*Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000)). Moreover, it applies to any "claim–no matter its label–against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech.*, 242 Mich. App. at 550, 619 N.W.2d at 72.

The statute of frauds bars the Nederhoeds' reliance on the FPA because that document was not signed by an authorized representative of Chase. The same is true of the rate change notices, even if they could be considered contractual agreements—a stretch by any measure. Moreover, nothing in the FPA or the rate change notices states that Chase agreed not to foreclose, as the Nederhoeds allege. Thus, this claim is properly dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and dismiss the Nederhoeds' complaint with prejudice.

An Order consistent with this Opinion will be entered.


Dated:  October 7, 2013                               /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE